UNITED STATES of America

v.

Leon CARMICHAEL, Sr.

Crim. Action No. 2:03cr259–T.

United States District Court,
M.D. Alabama,
Northern Division.

July 22, 2004.

Amardo Wesley Pitters, A. Wesley Pitters, P.C., Bruce Maddox, Law Office of Bruce Maddox, Montgomery, AL, Lisa Monet Wayne, Denver, CO, Mary Elizabeth Anthony, Anthony & Pratt LLC, Birmingham, AL, Ronald Wayne Wisé, Law Office of Ronald W. Wise, Montgomery, AL, Stephen Roger Glassroth, The Glassroth Law Firm, PC, for Defendant.

A. Clark Morris, Matthew S. Miner, Stephen P. Feaga, U.S. Attorney's Office, Montgomery, AL, for Plaintiff.

## SUPPLEMENTAL ORDER

MYRON H. THOMPSON, District Judge.

Defendant Leon Carmichael, Sr. is charged with drug conspiracy and money laundering. Shortly after his arrest, Carmichael set up an internet website related to this case. The government argued that Carmichael's website is threatening to witnesses and government agents and renewed its motion for a protective order directing Carmichael to remove the website from the internet. In an order issued two days ago, on July 20, 2004, the court denied the government's renewed motion. *United States v. Carmichael,* 326 F.Supp.2d 1267, 2004 WL 1616446 (M.D.Ala.2004) (Thompson, J.).

The dispute in this case is not limited to the internet, however, and the court writes separately to address the government's motion as it applies outside of cyberspace. An exact reproduction of the website as it existed as of late April 2004 (the third version) appeared as a full-page newspaper advertisement in the Montgomery Westside Weekly, a local weekly newspaper that targets primarily the African–American community;[1] also, there is no reason to doubt that the advertisement has appeared again repeatedly in that paper and in other similar papers. The government's requested relief, therefore, went beyond the internet; the government asked the court to restrain Carmichael "from taking any action ... that would harass, intimidate, or threaten any witness or prejudice the proceedings in this case, including, *without limitation,* placing the photo-graphs or personal information of any prospective witness or informant on a poster, *advertisement,* or website."[2] Similarly, at the May 21, 2004, hearing, the government indicated that its concerns about Carmichael's website would apply equally to newspaper advertisements containing the same content.

The court's reasoning regarding Carmichael's website applies with equal force to his newspaper advertisements. Accordingly, to the extent that the government's renewed motion includes a request for an order that Carmichael cease publishing the content of his website as newspaper advertisements, the motion is due to be denied.

■ Carmichael's website is constitutionally protected speech because it fits within neither the "true threat" nor the "incitement" exceptions to the First Amendment's protection. *Carmichael,* 326 F.Supp.2d. at 1280, 2004 WL 1616446, at *——. There is no reason to reach a different conclusion regarding Carmichael's newspaper advertisements because the First Amendment analysis does not turn on the medium involved. The court explicitly declined to find the fact that a website was at issue constitutionally significant. *Id.* at 1278, 2004 WL 1616446, at *——. Carmichael's newspaper advertisements are neither a "true threat" nor an "incitement" under the First Amendment.

■ The court also held that it could not order Carmichael to take down his website because the government did not meet its burden to show that a prior restraint on Carmichael's speech rights was warranted. *Carmichael,* 326 F.Supp.2d. at 1299, 2004 WL 1616446, at *——. The government did not show that its proposed protective order was the least restrictive means of

---

1. *See* Order, filed May 7, 2004.

2. Government's renewed motion, etc., filed

April 27, 2004, p. 18 (emphasis added).

eliminating the website's possible effect on jury members. *Id.* at 1294, 2004 WL 1616446, at *——. The same is true of Carmichael's advertisements. A juror or potential juror is more likely to come across Carmichael's newspaper advertisements inadvertently than to come across his website inadvertently, so a jury instruction not to view the advertisements will be somewhat less effective than an instruction not to view the website. Nonetheless, voir-dire questions and clear jury instructions will adequately address any possible impact that Carmichael's newspaper advertisements might have on the jury. Second, the government did not show that the website posed a serious and imminent threat to its witnesses and agents. *Id.* at 1277, 2004 WL 1616446, at *——. The government has not shown that the newspaper advertisements pose such a serious and imminent threat.

 Finally, the harm posed by the website did not warrant restricting Carmichael's Fifth and Sixth Amendment right to investigate his case. *Carmichael,* 326 F.Supp.2d. at 1276, 2004 WL 1616446, at *——. Not only is the same true in the case of Carmichael's newspaper advertisements, but his Fifth and Sixth Amendment interest is actually entitled to more weight here. Carmichael's website is hard to find on the internet even if one is looking for it, and it is very hard to imagine that someone could stumble upon his website by accident. Thus, to the extent that there exist people who have material information beneficial to Carmichael and who would be willing to share that information with him but do not know about this case or do not already know how to contact Carmichael, it is unlikely that the website will reach those people. On the other hand, Carmichael's newspaper advertisements are

more likely to attract the attention of a person who has—perhaps without being aware of it—material information useful to Carmichael's defense. Accordingly, the newspaper advertisements are more likely to lead to information, and this tilts the balance yet further in Carmichael's favor.[3]

Accordingly, it is ORDERED that the request for a protective order barring defendant Leon Carmichael, Sr., from publishing his website as a newspaper advertisement, which request was included in the renewed motion for a protective order filed by the government on April 27, 2004 (doc. no. 181), is denied as well.

DONE, this the 22nd day of July, 2004.

---

**3.** Moreover, if the newspaper advertisements (which essentially reproduce the internet site) are allowable, surely the internet site is also.